# STANDARD FORM APARTMENT LEASE
## For Property Constructed Before 1978
### (Fixed Term, Includes Lead Paint Certification)
### 2002 EDITION

**RHA** — Rental Housing Association

Date **26-Aug-02**

**Dad Construction Company, Inc.**
(Name)

**1714 Beacon Street**     **Brookline, MA 02445-2124**     **617-277-7640**
(Address)                                                    (Telephone No.)

Lessor, hereby leases to
**Richard Peterson, Nathan Ulrich, and Brandon Cook, jointly and severally**
(Name)

Lessee, who hereby hires the following premise: (Apartment) **#1** at: **186 Naples Road**

**Brookline, MA 02446**    Mass.(consisting of) _____
(City or Town)

**All rooms known and numbered as #1 at 186 Naples Road.**

for the term of **12 months**, beginning **01-Sep-02**

and terminating on **31-Aug-03**, The rent to be paid by the Lessee for the leases premises shall be as follows:

RENT:
A: The term rent shall be $ **$25,200.00**, payable, except as herein otherwise provided, in installments of $ **2100.00** on the 1st day of every month, in advance, so long as this lease is in force and effect.

**TENANT:** This section governs Rent payments. In some cases, rent payments may increase during the lease term. Please be sure that you carefully read and understand this section. Please initial here when you are certain that you understand and agree with this section.
Lessee's initials: _____

B: However, if in any tax year commencing with the fiscal year 2003 the real estate taxes on the land and buildings, of which the leased premises are a part, are in excess of the amount of the real estate taxes thereon for the fiscal year 2002, (herein called the "Base Year", and being the most recent year in which the Lessor has actually received a real estate tax bill for the leased premises) Lessee will pay to Lessor as additional rent hereunder, when and as designated by notice in writing by Lessor, **N/A** percent of such excess that may occur in each year of the term of this Lease or any extension or renewal thereof and proportionately for any part of a fiscal year. The Lessor represents to the Lessee that the term rent set forth in the immediately preceding paragraph (A) does not reflect any real estate tax increase subsequent to the said Base Year. Notwithstanding anything contained herein to the contrary, the Lessee shall be obligated to pay only that portion of such increased tax as the unit leased him bears to the whole of the real estate so taxed, and if the Lessor obtains an abatement of the real estate tax levied on the whole of the real estate of which the unit leased by Lessee is a part, a proportionate share of such abatement, less reasonable attorney's fees, if any, shall be refunded to said Lessee.
C: Notwithstanding anything contained herein to the contrary, if the leased premises are or become subject to rent control laws or other laws regulating rents, the Lessee shall not pay more than the maximum rent allowed under such applicable rent control laws or other laws regulating rents.
D: If at any time after the date hereof the leased premises are or become subject to rent control laws or other laws regulating rents, and if the Lessor is, in accordance with such laws, at any time authorized or permitted to increase the rent for the leased premises, and if at any time thereafter the Lessor gives written notice of his intention to implement such increase in whole or in part, then, in such event and not otherwise, the Lessee may terminate this lease by giving notice of his intention within thirty days after the Lessor's notice of implementation. If the Lessee gives such notice within thirty days, this lease shall terminate on the last day of the monthly rental period next after the date of such notice. If the Lessee does not give such notice within thirty days, then the rent shall be increased in accordance with the Lessor's notice of implementation commencing with the rent payment immediately following the expiration of said thirty day period, but in no event shall the rent exceed
$ **N/A** per month during the term hereof.

LESSOR AND LESSEE FURTHER COVENANT AND AGREE:
That during the term of this Lease and for such other and further period as the said Lessee shall occupy the said premises, all of the terms, covenants and conditions contained herein shall remain in full force and effect.

1. MAINTENANCE - For maintenance, if other than lessor, contact:

**Same As Above**
(Name)          (Address)          (Telephone No.)

2. Please see attached addendum.

000103

| | |
|---|---|
| 3. HEAT AND OTHER UTILITIES | The Lessee shall pay, as they become due, all bills for electricity and other utilities, whether they are used for furnishing heat or purposes, that are furnished to the demised premises and presently separately metered. The Lessor agrees that he will furnish reasonably hot and cold water and reasonable heat (except to the extent that such water and heat are furnished through utilities metered to the demised premises as stated above) during the regular heating season, all in accordance with applicable laws, but the failure of the Lessor to provide any of the forgoing items to any specific degree, quantity, quality, or character due to any causes beyond the reasonable control of the Lessor, such as accident, restriction by City, State or Federal regulations, or during necessary repairs to the apparatus shall not (subject to applicable law) form a basis of any claim for damages against the Lessor. |

> TENANT: This section governs utility payments. Be sure to discuss with the Lessor those payments which will be required of you for this apartment

| | |
|---|---|
| 4. ATTACHED FORMS | The forms, if any, attached hereto are incorporated herein by reference. |
| 5. CARE OF PREMISES | The lessee shall not paint, decorate or otherwise embellish and/or change and shall not make nor suffer any additions or alterations to be made in or to the leased premises without the prior written consent of the Lessor, nor make nor suffer any strip or waste, nor suffer the heat or water to be wasted, and at the termination of this lease shall deliver up the leased premises and all property belonging to the Lessor in good, clean and tenantable order and condition, reasonable wear and tear excepted. No washing machine, air-conditioning unit, space heater, clothes dryer, television or other aerials, or other like equipment shall be installed without the prior written consent of the Lessor. No waterbeds shall be permitted in the leased premises. |
| 6. CLEANLINESS | The Lessee shall maintain the leased premises in a clean condition. He shall not sweep, throw, or dispose of, nor permit to be swept, thrown or disposed of, from said premises nor from any doors, windows, balconies, porches or other parts of said building, any dirt, waste, rubbish or other substance or article into any other parts said building or the land adjacent thereon, except in proper receptacles and except in accordance with the rules of the Lessor. |
| 7. DEFINITIONS | The words "Lessor" and "Lessee" as used herein shall include their respective heirs, executors, administrators, successors, representatives and assigns, agents and servants; and the words "he", "his" and "him" where applicable shall apply to the Lessor or Lessee regardless of sex, number, corporate entity, trust or other body. If more than one party signs as Lessee hereunder, the covenants, conditions and agreements herein of the Lessee shall be the joint and several obligations of each such party. |
| 8. DELIVERY OF PREMISES | In the event the Lessor is not able through no fault of his own to deliver the leased premises to the Lessee at the time called for herein, the rent shall be abated on a pro rata basis until such time as occupancy can be obtained, which abatement shall constitute full settlement of all damages caused by such delay, or the Lessor, at his election, shall be allowed reasonable time to deliver possession of the leased premises, and if he cannot deliver such possession within 30 days from the beginning of said term, either the Lessor or Lessee may then terminate this lease by giving written notice to the other and any payment made under this lease shall be forthwith refunded. Lessee hereby authorizes and empowers Lessor to institute proceedings to recover possession of the premises on behalf of and in the name of Lessee. |
| 9. EMINENT DOMAIN | If the lease premises, or any part thereof, or the whole or any part of the building of which they are a part, shall be taken for any purpose by exercise of the power of eminent domain or condemnation, or by action of the city or other authorities or shall receive any direct or consequential damage for which the Lessor or Lessee shall be entitled to compensation by reason of anything lawfully done in pursuance of any public authority after the execution hereof and during said term, or any extension of renewal thereof, then at the option of either the Lessor or the Lessee, this lease and said term shall terminate and such option may be exercised in the case of any such taking, notwithstanding the entire interest of the Lessor and the Lessee may have been divested by such taking. Said option to terminate shall be exercised by either the Lessor or the Lessee, by giving a written notice of exercise of such option to terminate in the manner described in Section 17 of this lease. Said option to terminate shall not be exercised by either party (a) earlier then the effective date of taking, nor (b) later than thirty (30) days after the effective date of taking. The mailing of the notice of exercise as set forth hereinabove shall be deemed to be the exercise of said option; and upon the giving of such notice, this lease shall be terminated as of the date of the taking. If this lease and said term are not so terminated, then in case of any such taking or destruction of or damage to the leased premises, rendering the same or any part thereof unfit for use and occupation, a just proportion of the rent hereinbefore reserved, according to the nature and extent of the damage to the leased premises, shall be suspended or abated until, in the case of such taking, what may remain of the leased premises, shall have been put in proper condition for use and occupation. The Lessee hereby assigns to the Lessor any and all claims and demands for damages on account of any such taking or for compensation for anything lawfully done in pursuance of any public authority, and covenants with the Lessor that the Lessee will from time to time execute and deliver to the Lessor such further instruments of assignment of any such claims and demands as the Lessor shall request, provided however that the Lessee does not assign to the Lessor any claim based upon Lessee's personal property or other improvements installed by Lessee with Lessor's written permission. |
| 10. FIRE, OTHER CASUALTY | If the leased premises, or any part thereof, or the whole or a substantial part of the building of which they are a part, shall be destroyed or damaged by fire or other casualty after the execution hereof and during said term, or any extension or renewal thereof, then this lease and said term shall terminate at the option of the Lessor by notice to the Lessee. If this lease and said term are not so terminated, then in case of any such destruction of or damage to the leased premises, or to the common areas of the building customarily used by the Lessee for access to and egress from the leased premises, rendering the same or any part hereof unfit for use and occupation, a just proportion of the rent hereinbefore reserved, according to the nature and extent of the damage to the leased premises, shall be suspended or abated until the leased premises shall have been put in proper condition for use and occupation. If the leased premises or such common areas have not been restored by the Lessor to substantially their former condition for use and occupancy within thirty days after the damage occurred, the Lessee may terminate this lease by giving notice to the Lessor within thirty days following the termination of the thirty day period within which the Lessor failed to restore. If either party gives notice of intention to terminate under this section, this lease shall terminate on the last day of the then-current monthly rental period. |
| 11. DISTURBANCE ILLEGAL USE | Neither the Lessee nor his family, friends, relatives, invitees, visitors, agents or servants shall make or suffer any unlawful, noisy or otherwise offensive use of the leased premises, nor commit or permit any nuisance to exist thereon, nor cause damage to the leased premises, nor create any substantial interference with the rights, comfort, safety or enjoyment of the Lessor or other occupants of the same or any occupants of the same or any other apartment, nor make any use whatsoever thereof than as and for a private residence. No articles shall be hung or shaken from the windows, doors, porches, balconies, or placed upon the exterior windowsills. |
| 12 GOVERNMENT REGULATIONS | The Lessor shall be obligated to fulfill all of the Lessor's obligations hereunder to the best of the Lessor's ability but the Lessee's obligations, covenants and agreements hereunder shall not (subject to applicable law) be affected, impaired or excused because the Lessor is unable to supply or is delayed in supplying any service or is unable to make or is delayed in making any repairs, additions, alterations or decorations, or is unable to supply or is delayed in supplying any equipment or fixtures, if Lessor is prevented or delayed from doing so because of any law or governmental action or any order, rule or regulation of any governmental agency, (other than those regulating rents) which is beyond the Lessor's reasonable control. |

000104

13. COMMON AREA   No receptacles, vehicles, baby carriages or other articles or obstructions shall be placed in the halls or other common areas or passageways.

14. INSURANCE   Lessee understands and agrees that it shall be Lessee's own obligation to insure his personal property.

15. KEYS AND LOCKS   Upon expiration or termination of the lease, the Lessee shall deliver the keys of the premises to the landlord. Delivery of the keys by the Lessee to the Lessor, or to anyone on his behalf, shall not constitute a surrender or acceptance of surrender of the leased premises unless so stipulated in writing by the Lessor. In the event that the exterior door lock or locks in the leased premises are not in normal working order at any time during the term thereof, and if the Lessee reports such condition to the Lessor, then and in that event, the Lessor shall, within a reasonable period of time following receipt of notice from the Lessee of such condition, repair or replace such lock or locks. Locks shall not be changed, altered, or replaced nor shall new locks be added by the Lessee without the written permission of the Lessor. Any locks so permitted to be installed shall become the property of the Lessor and shall not be removed by the Lessee. The Lessee shall promptly give a duplicated key to any such changed, altered, replaced or new lock to the Lessor.

16. LOSS OR DAMAGE   The Lessee agrees to indemnify and save the Lessor harmless from all liability, loss or damage arising from any nuisance made or suffered on the leased premises by the Lessee, his family, friends, relatives, invitees, visitors, agents, or servants or from any carelessness, neglect or improper conduct of any such persons. All personal property in any part of the building within the control of the Lessee shall be at the sole risk of the Lessee. Subject to provisions of applicable law the Lessor shall not be liable for damage to or loss of property of any kind which may be lost or stolen, damaged or destroyed by fire, water, steam, defective refrigeration, elevators, or otherwise, while on the leased premises or in any storage space in the building or for any personal injury unless caused by the negligence or the Lessor.

17. NOTICES   Written notice from the Lessor to the Lessee shall be deemed to have been properly given if mailed by registered or certified mail, postage prepaid, return receipt requested to the Lessee at the address of the leased premises, or if delivered or left in or on any part thereof, provided that if so mailed, the receipt has been signed, or if so delivered or left, that such notice has been delivered to or left with, the Lessee or anyone expressly or impliedly authorized to receive messages for the Lessee, or by any adult who resides with the Lessee in the leased premises. Written notice from the Lessee to the Lessor shall be deemed to have been properly given if mailed by registered or certified mail, postage prepaid, return receipt requested to the Lessor at his address set forth in the first paragraph of this lease, unless the Lessor shall have notified the Lessee of a change of the Lessor's address, in which case such notice shall be so sent to such changed address of the Lessor, provided that the receipt has been signed by the Lessor or anyone expressly or impliedly authorized to receive messages for the Lessor. *Notwithstanding the foregoing, notice by either party to the other shall be deemed adequate if given in any other manner authorized by law.*

18. OTHER REGULATIONS   The Lessee agrees to conform to such lawful rules and regulation which are reasonably related to the purpose and provisions of this lease, as shall from time to time are established by the Lessor in the future for the safety, care, cleanliness, or orderly conduct of the leased premises and the building of which they are a part, and for the benefit, safety, comfort and convenience of all the occupants of said building.

19. PARKING   Parking on the premises of the Lessor is prohibited unless written consent is given by the Lessor.

20. PETS   No dogs or other animals, birds or pets shall be kept in or upon the leased premises without the Lessor's written consent; and consent so given may be revoked at any time.

21. PLUMBING   The water closets, disposals, and waste pipes shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags, or any other improper articles be thrown into the same; and any damage to the building caused by the misuse of such equipment shall be borne by the Lessee by whom or upon whose premises it shall have been caused, unless caused by the negligence of the Lessor, or by the negligence of an independent contractor employed by the Lessor.

22. REPAIRS   The Lessee agrees with the Lessor that, during this lease and for such further time as the Lessee shall hold the leased premises or any part thereof, the Lessee will at all times keep and maintain the leased premises and all equipment and fixtures therein or used therewith repaired, whole and of the same kind, quality and description and in such good repair, order and condition as the same are at the beginning of, or may be put in during the term of any extension or renewal thereof, reasonable wear and tear and damage by unavoidable casualty only excepted. The Lessor and Lessee agree to comply with any responsibility which either may have under applicable law to perform repairs upon the leased premises. If Lessee fails within a reasonable time, or improperly makes such repairs, then and in any such event or events, the Lessor may (but shall not be obligated to) make such repairs and the Lessee shall reimburse the Lessor for the reasonable cost of such repairs in full, upon demand.

23. RIGHT OF ENTRY   The Lessor may enter upon the leased premises to make repairs thereto, to inspect the premises, or to show the premises to prospective tenants, purchasers, or mortgagees. The Lessor may also enter upon the said premises if same appear to have been abandoned by the Lessee or as permitted by law.

24. NON-PERFORMANCE OR BREACH LESSEE   If the Lessee shall fail to comply with any lawful term, condition, covenant, obligation, or agreement expressed herein or implied hereunder, or if the Lessee shall be declared bankrupt, or insolvent according to law or if any assignment of the Lessee's property shall be made for the benefit of creditors, or if the premises appear to be abandoned then, and in any of the said cases and notwithstanding any license or waiver of any prior BY breach of any of the said terms, conditions, covenants, obligations, or agreements, the Lessor, without necessity or requirement of making any entry may (subject to the Lessee's rights under applicable law) terminate this lease by:
1 a seven (7) day written notice to the Lessee to vacate said leased premises in case of any breach except only for non-payment of rent, or
2 a fourteen (14) day written notice to the Lessee to vacate said leased premises upon the neglect or refusal of the Lessee to pay the rent as herein provided. Any termination under this section shall be without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of any of the said terms, conditions, covenants, obligations or agreements.

25. LESSEE'S COVENANTS IN EVENT OF TERMINATION   The Lessee covenants that in case of any termination of this lease, by reason of the default of the Lessee, then at the option of Lessor:
(A) the Lessee will forthwith pay to the Lessor as damages hereunder a sum equal to the amount by which the rent and other payments called for hereunder for the remainder of the term or any extension or renewal thereof exceed the fair rental value of said premises for the remainder of the term or any extension or renewal thereof; and
(B) the Lessee covenants that he will furthermore indemnify the Lessor from and against any loss and damage sustained by reason of any termination caused by the default of, or the breach by, the Lessee. Lessor's damages hereunder shall include, but shall not be limited to any loss of rents; reasonable broker's commissions for the re-letting of the leased premises; advertising costs; the reasonable cost incurred in cleaning and repainting the premises in order to re-let the same; and moving and storage charges incurred by Lessor in moving Lessee's belongings pursuant to eviction proceedings.
(C) At the option of the Lessor, however, Lessor's cause of action under this article shall accrue when a new tenancy or lease term first commences subsequent to a termination under this lease, in which event Lessor's damages shall be limited to any and all damages sustained by him prior to said new tenancy or lease date.

000105

Lessor shall also be entitled to any and all other remedies provided by law. All rights and remedies are to be cumulative and not exclusive.

26. REMOVAL OF GOODS — Lessee further covenants and agrees that if Lessor shall remove Lessee's good or effects, pursuant to the terms hereof or of any Court order, Lessor shall not be liable or responsible for any loss of or damage to Lessee's goods or effects and the Lessor's act of so removing such goods or effects shall be deemed to be the act of and for the account of Lessee, provided, however, that if the Lessor removes the Lessee's goods or effects, he shall comply with all applicable laws, and shall exercise due care in the handling of such goods to the fullest practical extent under the circumstances.

27. NON-SURRENDER — Neither the vacating of the premises by the Lessee, nor the delivery of keys to the Lessor shall be deemed a surrender or an acceptance of surrender of the leased premises, unless so stipulated in writing by Lessor.

28. SUBLETTING, NUMBER OF OCCUPANTS — The Lessee shall not assign nor underlet any part of the whole of the leased premises, nor shall permit the leased premises to be occupied for a period longer than a temporary visit by anyone *except the individuals specifically named in the first paragraph of this lease, their spouses, and any children born to them during the term of this lease* or any extension or renewal thereof without first obtaining on each occasion the assent in writing of the Lessor.

29. TRUSTEE — In the event that the Lessor is a trustee or a partnership, no such trustee nor any beneficiary nor any shareholder of said trust and no partner, General or Limited, of such partnership shall be personally liable to anyone under any term, condition, covenant, obligation, or agreement expressed herein or implied hereunder or for any claim of damage or cause at law or in equity arising out of the occupancy of said leased premises, the use or the maintenance of said building or its approaches or equipment.

30. WAIVER — The waiver of one breach of any term, condition, covenant, obligation, or agreement of this lease shall not be considered to be a waiver of that or any other term, condition, covenant, obligation, or agreement or of any subsequent breach thereof.

31. SEPARABILITY CLAUSE — If any provision of this lease or portion of such provision or the application thereof to any person or circumstance is held invalid, the remainder of the lease (or the reminder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

32. COPY OF LEASE — The Lessor shall deliver a copy of this lease, duly executed by Lessor or his authorized agent, to the Lessee within thirty (30) days after a copy hereof, duly executed by the Lessee, has been delivered to the Lessor.

33. REPRISALS PROHIBITED — The Lessor acknowledges that provisions of applicable law forbid a landlord from threatening to take or taking reprisals against any tenant for seeking to assert his legal rights.

34. LEAD PAINT — Pursuant to the Massachusetts Lead Law, the Lessee certifies that the Lessee has received the following (check all received):
☒ Tenant Lead Law Notification (see addendum)  ☐ Risk Assessment Report
☐ Lead Inspection Report  ☐ Letter of Interim Control
☐ Letter of Compliance

The Massachusetts Lead Law prohibits rental discrimination, including refusing to rent to families with children or evicting families with children because of lead paint. The Tenant Lead Law Notification is also available from the Childhood Lead Poisoning Prevention Program in the following languages: Cambodian, Chinese, Haitian Creole, Laotian, Portuguese, Spanish, and Vietnamese. The Massachusetts Department of Public Health's Childhood Lead Poisoning Prevention Program (CLPPP) has additional information on a full range of topics related to lead poisoning prevention, tenants' and owners' rights and responsibilities under the Lead Law and Regulations, financial assistance for owners, and safe deleading and renovation work. CLPPP can be reached at 1-800-532-9571. More information is also available from the local lead poisoning prevention program, or the local Board of Health.

IN WITNESS WHEREOF, the said parties hereunto and to another instrument of like tenor, have set their hands and seals on the day and year first above written; and Lessee as an individual states under the pains and penalties of perjury that said Lessee is over the age of 18 years.

_____ 08/30/02    _____
Lessee                               Lessor

_____ 08/30/02    _____
Beandon Cole                         Trustee or Agent

_____ 08/30/02

TENANT: SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR DAMAGE RESULTING FROM FIRE.

TENANT: MAKE SURE TO RECEIVE A SIGNED COPY OF THIS LEASE.

In consideration of the execution of the within lease by the Lessor at the request of the undersigned and of one dollar paid to the undersigned by the Lessor, the undersigned hereby, jointly and severally, guarantee to the Lessor, and the heirs, successors, and assigns of the Lessor, the punctual performance by the Lessee and the legal representatives, successors and assigns of the Lessee of all the terms, conditions, covenants, obligations, and agreements in said lease on the Lessee's or their part to be performed or observed, demand and notice of default being hereby waived. The undersigned waive all surety-ship defenses and defenses in the nature thereof and assent to any and all extensions and postponements of the time of payment and all other indulgences and forbearance's which may be granted from time to time of the Lessee.

WITNESS the execution hereof under seal by the undersigned the day and year first written in said lease.

_____    _____

000106

# RHA

## RENT AND SECURITY DEPOSIT RECEIPT

TO: Richard Peterson, Nathan Ulrich, and Brandon Cook, jointly and severally

RE: #1

_____
Address

186 Naples Road

_____
City            Zip

Brookline, MA 02446

City            Zip

We hereby acknowledge receipt of your check # _____ in the total amount of $ _____ to be applied as follows:

1. First Month's Rent   9/1/02   through _____.   $ 2100.00

2. Last Month's Rent                                        2100.00

3. Purchase or Installation cost for a key and lock

4. Security Deposit (see attached condition form)          2100.0

**SECURITY DEPOSIT**

A. The Lessor acknowledges receipt from the Lessee of $2100.0 _____ (an amount not to exceed one month's rent) to be held by the Lessor during the term hereof, or any extension or renewal, as a security deposit pursuant to the terms hereof; it being understood that THIS DEPOSIT IS NOT TO BE CONSIDERED PREPAID RENT, nor shall damages be limited to the amount of the security deposit.

B. The Lessor acknowledges that, subject to damages prescribed by law, he shall, within thirty (30) days after the termination of this lease or upon the Lessee's vacating the premises completely together with all his goods and possessions, whichever shall last occur, return the security deposit or any balance thereof, and any interest theron, if due, after deducting

(1) Any unpaid rent which has not been validly withheld or deducted pursuant to the provisions of any special or general law; and
(2) Any unpaid increase in real estate taxes which the Lessee is obligated to pay pursuant to a tax escalation clause which conforms to the requirements of Mass. General Laws, Chapter 186, Section 15C; and
(3) A reasonable amount necessary to repair any damage caused to the premises by the Lessee or any person under the Lessee's control or on the premises with the Lessee's consent, reasonable wear and tear excluded. In the case of such damage, the Lessor shall provide the Lessee within (30) days with an itemized list of damages, sworn to by the Lessor or his agent under pains and penalties of perjury, itemizing in precise detail the nature of the damage and of the repairs necessary to correct it, and written evidence, such as estimates, bills invoices or receipts, indicating the actual or estimated cost thereof.

C. The Lessor must submit to the Lessee a separate written statement of the present condition of the premises, as required by law. If the Lessee disagrees with the Lessor's statement of condition, the Lessee must attach a separate list of any damage existing in the premises and return the statement to the Lessor. No amount shall be deducted from the security deposit for any damage which was listed in the statement of condition or in any separate list submitted by the Lessee and approved by the Lessor or the Lessor's agent, unless the Lessor subsequently repaired or caused to be repaired said damage and can prove that the renewed damage was unrelated to the prior damage and was caused by the Lessee or by any person under the Lessee's control or on the premises with the Lessee's consent.

D.  If the Lessor transfers the premises, the Lessor must transfer the security deposit or any balance thereof, and any accrued interest, to the Lessor's successor in interest for the benefit of the Lessee.

As required by law, the security deposit is presently or will be held in a separate, interest-bearing account.

(number _____) at _____
                                         Bank

_____
Address                City          State        Zip

If the security deposit is held for one year or longer from the commencement of the tenancy, the Lessee shall be entitled to interest on the amount of the security deposit at the current bank rate per year, payable at the end of each year of the tenancy.

LAST MONTH'S RENT

Pursuant to applicable law, the tenant is entitled to interest on last month's rent paid at the current bank rate from the first day of tenancy, payable at the end of each year of tenancy and prorated upon termination. Interest shall not accrue for the last month for which rent was paid in advance. The tenant should provide the landlord with a forwarding address at the termination of tenancy indicating where such interest may be given or sent.

Date received ___/___/___.        Authorized Signature: _____

**Dad Construction Company, Inc.**
Lessor                                                    Agent

**1714 Beacon Street**
Address                                                   Address

**Brookline, MA 02445-2124**
City                    Zip                               City           Zip

617-~~787-1188~~ 277-7640
Phone                                                     Phone

000108

# Tenant Lead Law Notification

**What lead paint forms must owners of rental units give to tenants?**
All tenants who live in units built before 1978 must be given two copies of this **Tenant Lead Law Notification** and **Tenant Certification Form**. If any of the following documents exist for the unit, tenants must also be given a copy of them: lead inspection or risk assessment report, Letter of Compliance, or Letter of Interim Control.

**When do owners have to give tenants these forms?**
New tenants must be given the forms before entering the rental agreement, beginning **September 1, 1995**. Current tenants must be given the forms during the one year period starting **December 1, 1995** at the time of lease renewal, or if there is no lease, any time during the year, but no later than **December 1, 1996**.

**What is lead poisoning, and how do children become lead poisoned?**
Lead poisoning is a disease. Lead can make children, especially those under six years old, very sick and can cause learning and behavior problems. Lead is often found in paint on the inside and outside of homes. The main way a child can get lead poisoned is from swallowing lead paint dust and chips. A child can also get lead from other sources, such as soil and water, but these rarely cause lead poisoning by themselves. The only way to tell for sure that a child is lead poisoned is to have his or her blood tested. Your doctor, other health care provider, or Board of Health can do this. A lead poisoned child will need medical care. A home with lead paint must be deleaded for a lead poisoned child to get well.

**What can you do to prevent lead poisoning?**
- Talk to your child's doctor about lead.
- Have your child tested for lead at least once a year until he or she is four years old.

Ask the owner if your home has been deleaded or call the state Childhood Lead Poisoning Prevention Program (CLPPP) at 1-800-532-9571, or your local Bord of Health.
- Ask the owner if you have a new baby, or if a new child under six years old lives with you.

If your home was deleaded, but has peeling paint, tell and write the owner. If he or she does not respond, call CLPPP or your local Board of Health.

If your home has not been deleaded, you can do some things to reduce temporarily the chances of your child becoming lead poisoned. You can clean your home regularly to wipe up dust and loose paint chips. Use a cleaner called TSP or an automatic dishwasher detergent high in phosphate, or other cleaners made just for cleaning lead dust and chips. The areas to clean most often are window wells, sills, and floors. Wash your child's hands often (particularly before eating or sleeping) and wash your child's toys. Remember, the only way to permanently lower the risk of your child getting lead poisoned is to have your home deleaded if it contains lead paint.

**What does the Lead Law require the owner of your home to do if a child under six years old lives there?**
An owner of a house built before 1978 must have the home inspected for lead if a child under six years old lives there. If lead hazards are found, it must be deleaded or brought under interim control. A licensed deleader has to do all removal of leaded paint, and all other high-risk work. The owner or someone who works for him who is not a licensed deleader can do certain low-risk deleading and interim control work. After the work is done, the lead inspector or risk assessor issues a Letter of Compliance or Letter of Interim Control. The owner must make sure there is no peeling paint anytime after getting a Letter of Compliance or Letter if Interim Control.

**What is a Letter of Compliance?**
It is a legal letter that says either that there are no lead paint hazards or that the home has been deleaded. The letter is signed and dated by a licensed lead inspector.

**What is a Letter if Interim Control?**
It is a legal letter that says the work necessary to make the home temporarily safe from lead hazards has been done. The letter is signed and dated by a licensed lead risk assessor. It is good for one year, but can be renewed for one more year. The owner must fully delead the home and get a Letter of Compliance before the end of the second year.

**000109**

# Tenant Certification Form

I (tenant) certify that I have received the following:(check all that you received)

☒ Tenant Lead Law Notification (on reverse side or on separate sheet)  ☐ Lead Inspection Report  ☐ Risk Assessment Report
☐ Letter of Interim Control  ☐ Letter of Compliance

**Tenant Information:**

Name **Richard Peterson, Nathan Ulrich, and Brandon Cook, jointly and severally**

Street **186 Naples Road**   Apt **#1**

City/Town **Brookline, MA 02446**   Zip

Tenant's Signature _[signatures]_   Date **08/30/02**

Owner/Managing Agent Information:

Name **Dad Construction Company, Inc.**

Street **1714 Beacon Street**   Apt

City/Town **Brookline, MA 02445-2124**   Zip

Telephone # **617-~~787-1138~~ 277-7640**

Owner's/Manager's Signature _____   Date _____

☐ I (owner/managing agent) certify that I provided the Tenant Lead Law Notification/Tenant Certification form and any lead law document to the tenant, but the tenant refused to sign this certification. The tenant gave the following reason:

_____
_____

..............................................................................................

The Massachusetts Lead Law prohibits rental discrimination, including refusing to rent to families with children or evicting families with children because of lead paint.

This form is also available from the Childhood Lead Poisoning Prevention Program in the following languages: Cambodian, Chinese, Haitian Creole, Laotian, Portuguese, Spanish, and Vietnamese.

The Massachusetts Department of Public Health's Childhood Lead Poisoning Prevention Program (CLPPP) has additional information on a full range of topics related to lead poisoning prevention, tenants and owners' rights and responsibilities under the Lead Law and Regulations, financial assistance for owners, and safe deleading and renovation work. CLPPP can be reached at 1-800-532-9571. More information is also available from the local lead poisoning program, or the local Board of Health.

**000110**

# RHA

## APARTMENT CONDITION STATEMENT

This is a statement of the condition of the premises you have leased or rented. You should read it carefully in order to see if it is correct. If it is correct, you must sign it. This will show that you agree that the list is correct and complete. If it is not correct, you must attach a separate signed list of any damage which you believe exists in the premises. This statement must be returned to the lessor or his agent within fifteen (15) days after you receive this list or within fifteen (15) days after you move in, whichever is later. If you do not return this list within the specified time period, a court may later view your failure to return the list as your agreement that the list is complete and correct in any suit which you may bring to recover the security deposit.

TO: Richard Peterson, Nathan Ulrich, and Brandon Coo    RE: #1
Lessee                                                  Unit

Address                                                 186 Naples Road
                                                        Address
                                                        Brookline, MA 02446
City                                                    City           Zip

We have examined the premises and have found the present condition to be as follows:

**The apartment is in good and habitable condition with the following exceptions (if any):**

Date: ___/___/___    Lessor/Agent Signature: _____

Lessor  Dad Construction Company, Inc.              Agent

Address 1714 Beacon Street                          Address

City    Brookline, MA 02445-2124                    City           Zip

Phone   617-~~787-1188~~ 277-7640                   Phone

AGREED AND ASSENTED TO: _____              ___/___/___
                        Lessee                        Date

ADOPTED BY THE RENTAL HOUSING ASSOCIATION OF THE           000111
GREATER BOSTON REAL ESTATE BOARD

## ADDENDUM TO LEASE

LESSEES: Richard Peterson, Nathan Ulrich and Brendan Cook, jointly and severally liable.
PREMISES: 186 Naples Road #, Brookline, MA 02446
DATE: 30 August, 2002

ADDITIONAL PROVISIONS:

1. It is understood and agreed that this Addendum is incorporated and becomes a part of the Lease. In the event of a conflict between the provisions of this Addendum and the Lease, the provisions of this Addendum shall govern.

2. Occupancy is limited to the above named Lessees only.

3. Lessor and Lessees acknowledge that $ 2100 — shall be used as first month's rent, $ 2100 — shall be used as last month's rent and $ 2100 — shall be used as a refundable security deposit. One-half the security deposit shall be paid on or before October 1, 2002. Failure by Lessees to pay such sums in full to Lessor in a timely manner shall permit Lessor to terminate this Lease and rent the Premises to other lessees. Any sums paid to Lessor or its agent shall be retained as liquidated damages.

4. No water-filled furniture shall be used on or within the Premises.

5. No pets shall be allowed on or within the Premises.

6. Subletting of the Premises is specifically prohibited.

7. Parties on or within the Premises which cause disturbances and/or damages are not permitted and shall be cause for Lease termination. Keg parties are not allowed under any circumstances. Parties of 15 or more people are not allowed under any circumstances. Any and all parties of any size must terminate no later that 11:00 p.m. on weekdays and midnight on week-ends.

8. Any and all "bounced" or returned checks (for whatever reason), shall be subject to a $100.00 charge to the lessee per such check.

9. Window shades and light bulb replacements are Lessees' responsibility.

10. No lock may be changed, added or removed without the express written permission of Lessor.

11. Lessees agree to remove all trash from the Premises in sealed plastic bags placed in proper trash containers. Trash is not to be left out overnight, but is to placed on the curb at the appropriate collection area the morning of trash collection. Trash is not to be left in the hallways. Any trash strewn about the Premises or the collection area shall be cleaned up by the Lessees. Any violation of this paragraph shall be subject to a charge of $100.00 per Lessee per violation.

12. All personal property (i.e., bicycles, strollers, etc.) shall be kept within the apartment and not in hallways, stairways or common areas. Any violation of this paragraph shall be subject to a charge of $100.00 per Lessee per violation.

13. In the event the Premises is a condominium, Lessees agree to obey and comply with the rules and regulations of the condominium association. Any fines levied on Lessor due to the abuse/misbehavior of Lessees, their family, friends and/or visitors will be Lessees' responsibility and shall be paid by Lessees.

000112

14. Lessees agree to pay rent with one (1) check on the first (1st) day of each calendar month. Any rents received after the third (3rd) day of any calendar month shall be subject to a $100.00 per Lessee charge. School vacations shall not relieve Lessees of this obligation.

15. Heat and hot water are not included in the rent.

16. Parking for five (5) cars (no campers, trailers, etc.) is included herein, in spaces from time to time designated by Lessor.

17. If the Premises are for sale or for lease, the Premises may be shown periodically with prior telephone notice to Lessees.

18. Lessees agree to allow Lessor or its representatives entry to the Premises between 9:00 a.m. and 9:00 p.m. seven (7) days a week for any valid purpose (i.e., to show to prospective tenants or buyers, for inspections, or maintenance or repairs), upon one hour telephone notice with or without Lessees being present.

19. It is not a condition of the Lease that the Premises be painted.

20. Lessees agree to pay any and all costs including attorneys fees in any action involving the enforcement of the Lease or the terms hereof.

21. Lessees and co-signors acknowledge and agree that any breach of the terms of the Lease or non-payment of rent hereunder may be reported to all credit bureaus.

22. Lessor may apply security deposits to non-paid rent, where after Lessees shall immediately replenish such security deposits.

23. There is a $75.00 fee to each Lessee for each "14 Day Notice to Quit" that is sent.

24. Lessees are responsible for insuring their personal belongings as well as obtaining renter's insurance.

25. Lessees agree to provide completed Guarantor forms within one (1) week of signing the Lease. Guarantors must have sufficient income resources to cover the Lease obligations and have acceptable credit. Failure to provide these forms shall permit Lessor to terminate this Lease and rent the Premises to other lessees. All deposits may be applied by Lessor to damages (actual or consequential) sustained by Lessor.

26. Termination: Lessees acknowledge that the Lease terminates at 12:00 Midnight of the final day of the term. Lessees must insure that the Premises are empty and cleaned by such time. Upon inspection of the Premises, should Lessor find it in unsatisfactory condition, a professional cleaning service may be hired and Lessees will be charged therefor, including without limitation:

> Kitchen: Removal of all food items from the refrigerator/freezer and cabinets. Cleaning and defrosting the refrigerator/freezer, and wiping cabinets. Cleaning the dishwasher. Cleaning the oven/stove.
> Bathroom: Cleaning/disinfecting the tub/shower, toilet and sink.
> Overall: Vacuuming, sweeping, mopping all floors. Removal of trash and debris from the Premises. Removal of all furniture and personal items.

27. Lessees acknowledge that they have been provided with a copy of the "Tenant Lead Law Notification".

28. We have read the Lease and this Addendum and understand it. We agree to abide with the Lease and this Addendum, including each clause without exception.

Lessees:

_____ 08/30/02         _____ 08/30/02

_____ 08/30/02