**EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-10804 JLT

|  |  |
|---|---|
| DAD CONSTRUCTION CO., INC., <br> Plaintiff, <br><br> v. <br><br> DEREK HEIMLICH, ANDREW LEVY and, <br> ARLEIGH GOODWIN, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' MOTION TO AMEND ANSWER AND COUNTERCLAIMS TO ASSERT ADDITIONAL CLAIMS AND JOIN A NEW PARTY

NOW COME Derek Heimlich, Andrew Levy and Arleigh Goodwin, hereinafter referred to as the defendants, through their attorney Richard J. Bombardo, and hereby move this Honorable Court, Pursuant to Federal Rule of Civil Procedure Rules 15 and 19 to 1) add a new claim against Dad Construction Co., Inc. and 2) to join Arnold M. Freidfertig as an involuntary plaintiff and assert claims against him personally upon the grounds set forth below. The defendants submit that the circumstances underlying this motion are extraordinary and that substantial good cause exists for this motion to be granted.

### GROUNDS FOR THIS MOTION

1. The plaintiff is a Massachusetts Corporation whose structure of officers and ownership was unknown to the defendants at the time their answer and counterclaims was filed in the Norfolk Superior Court.

2. Litigation between the parties began when the defendants, having vacated their respective apartments at the end of August 2003, filed small claims actions against Arnold M. Freidfertig, whom they knew as their landlord, seeking damages for willful violation of the Massachusetts security deposit law, Chapter 186 of the Massachusetts General Laws for failure to return their security deposit within 30 days as required by statute. Derek Heimlich and Andrew Levy filed their small claims actions on or about October 2003. Arleigh Goodwin filed his small claims action on or about December 2003. The defendants were unrepresented by counsel and unaware of the requirement that these actions be filed against Dad Construction Co., Inc., a corporation, and not Mr. Freidfertig individually.

3. The plaintiff then embarked on an ever increasing campaign to overwhelm the defendants, delay the action, and to intimidate the defendants into not pursuing their valid and wholly proper legal claims for security deposit violations.

4. Mr. Freidfertig is an attorney and presumably well versed in basic litigation principles. Mr. Freidfertig filed a motion to dismiss the complaints because they were not filed against Dad Construction Co., Inc. The complaints were dismissed and the defendants refiled their small claims actions against Dad Construction Co., Inc.

5. In retaliation, Dad Construction Co., Inc. filed the instant action alleging that the defendants caused $95,000.00 in damage to the premises in question during their tenancy, although the plaintiff did not send the defendants any notice that it was

alleging any damage had been caused until after the defendants sued for return of their security deposit.

6. In fact, the defendants did not cause any damage to the premises and the plaintiff's claim is based entirely on fraud.

7. The plaintiff, knowing all facts prior to commencing the instant action chose deliberately to file its lawsuit against only those former tenants of the plaintiff, the defendants herein, whom sued the plaintiff in small claims court for breach of the security deposit law as a retaliatory measure and solely because the defendants had each sued the plaintiff for return of their security deposit and for damages for violation of the law.

8. The plaintiff did not sue the other tenants of 186 Naples Street, Brookline, Massachusetts even though there would be no way prior to discovery for the plaintiff to have even determined whether the defendants it chose to sue caused the damage and not the other tenants occupying the same premises as co-tenants. The defendants submit that this is strong evidence of the improper motivation of the plaintiff in the instant lawsuit.

9. After being served with the Norfolk Superior Court Action, the defendants realized that they would have to retain counsel to defend that action, which was no doubt a calculation made by the plaintiff in filing said action.

10. The defendants filed an Answer and Counterclaims to the original Complaint, not knowing the structure of the plaintiff corporation, and therefore unsure if it would be appropriate to plead the claims against Mr. Freidfertig personally which they now seek to be added to the action.

11. The defendants removed the action to federal court on April 26, 2004 and served same on the plaintiff.

12. Attorney Michael Stone, of Peabody & Arnold, 30 Rowes Wharf, Boston, MA 02110, telephoned the undersigned on May 5, 2003 and advised that he was going to represent the plaintiff. Attorney Stone advised the undersigned that he was going to file an appearance for the plaintiff and indicated he would fax or mail over a letter of representation, which was requested by the undersigned. No letter of representation was received however.

13. Attorney Stone indicated that the plaintiff had a strong case for damages against the defendants, but stated that since litigating these claims would only line the pockets of the respective lawyers, but not serve the true interests of the parties themselves, that the parties should strongly consider settlement for financial reasons.

14. During the first conversation the undersigned had with Attorney Stone, inquiry was made into the corporate structure of the plaintiff, and Attorney Stone advised the undersigned that it was his understanding that the plaintiff was a closely held corporation with Mr. Freidfertig as the only corporate officer and shareholder. It was during this conversation that the defendants first discovered that a claim against Mr. Freidfertig personally to pierce the corporate veil would be appropriate.

15. The undersigned advised Attorney Stone during this same telephone conversation that it was thus the intent of the defendants to amend their pleading asserting claims against Mr. Freidfertig personally. However, Attorney Stone strongly

indicated that the case should be settled and asked for the parties to take no further legal action while discussing settlement (the nature of the settlement discussions is inadmissible and therefore is not addressed in this motion).

16. The undersigned agreed to discuss settlement prior to amending the defendants' pleadings. During this same conversation, the undersigned and Attorney Stone reached a specific agreement that in the event the matter did not settle, to control litigation costs, the plaintiff would not answer the defendants' counterclaims, but instead would allow the defendants to amend their pleading to include the personal claims against Mr. Freidfertig as of right without leave of court because no answer had yet been filed, and then the plaintiffs would answer the amended pleading, thereby avoiding the cost of motion practice on this issue.

17. Attorney Stone spoke with the undersigned several times between May 3, 2003 and May 14, 2003, and each time Attorney Stone indicated he would represent the plaintiff and Mr. Freidfertig (the defendants do not assert that Attorney Stone made any misrepresentations himself).

18. However, the plaintiff did not retain attorney Stone and presumably never had any intent of doing so. Mr. Freidfertig's use of Attorney Stone's contacts with the undersigned seems in retrospect to have been a further attempt on the part of Mr. Freidfertig (not Attorney Stone) to intimidate the defendants into dropping their claims. When Mr. Freidfertig realized that the intimidation would not force the defendants to drop their suit, he continued litigating the action himself when he knew or reasonably should have known that he should not do so because his representation of the plaintiff would be improper because he was a necessary

witness in the action and could not be both witness and counsel and also that he was not a member of the federal bar.

19. On or about May 14, 2004, the plaintiff, by Arnold M. Freidfertig himself, filed a Motion to Remand in the U.S. District Court. That motion was wholly improper because Attorney Freidfertig was not admitted to the U.S. District Court and furthermore, was a necessary witness because of his almost exclusive personal dealings with the defendants on behalf of the plaintiff for all aspects of the defendants' tenancy.

20. The defendants filed an opposition to the Motion to Remand, and the undersigned contacted Mr. Freidferitg directly by telephone on May 26, 2004. The undersigned advised him that an opposition to the Motion to Remand would be filed, and asked him to voluntarily recuse himself as counsel for the plaintiff because his representation would be improper under the circumstances. Mr. Freidfertig agreed he should withdraw from the action as counsel and retain alternate counsel for the plaintiff. On that basis, the undersigned advised Mr. Freidfertig that he would not file a motion to disqualify him, but instead would give him two weeks to retain alternate counsel.

21. During this same telephone conversation, Mr. Freidfertig and the undersigned agreed that the defendants should dismiss their small claims actions in the Brookline District Court and that the claims should be added to the instant action. Both the undersigned and Mr. Freidfertig advised the Brookline District Court orally and in writing that the claims would be dismissed without prejudice and asserted in the instant action.

22. On or about May 27, 2004, the defendants served and filed their opposition to the Motion to Remand, which indicated that the motion was improperly filed, but that Mr. Freidfertig had advised the undersigned that he would retain counsel and therefore a motion to disqualify was not filed.

23. On or about June 14, 2004, the plaintiff's Motion to Remand was denied.

24. On May 26, 2004, Mr. Freidfertig contacted the defendants' counsel directly in an attempt to settle the actions, probably realizing at that point that he was going to be called on his fraud and improper conduct and attempting to convince the defendants to settle the claim for their original security deposit. However, the defendants had already incurred significant legal fees and were not going to be intimidated by Mr. Freidfertig's actions and wanted to see receipts for the alleged repairs, which Mr. Freidfertig promised to provide, but has still not done so.

25. The undersigned counsel advised Mr. Freidfertig on May 26, 2004 that his Motion to Remand was improperly filed because he was not a member of the federal bar, and since he was also a necessary witness, it was wholly improper for him to represent the plaintiff in this action. The defendants gave Mr. Freidfertig two weeks to retain counsel and agreed not to file a motion to disqualify him as counsel so that he may obtain proper counsel for the plaintiff. Mr. Freidfertig asked for one month to retain counsel, that request was denied, but the defendants agreed not to file any motion for two weeks. Mr. Freidfertig then promised to obtain counsel within two weeks.

26. On June 30, 2004, the undersigned contacted Mr. Freidfertig to inquire whether he had yet retained counsel. He indicated that he had not yet done so and asked for

two more weeks. The undersigned advised Mr. Freidfertig that he was delaying the action unreasonably, and that the defendants would only give him another week to retain counsel, but that no further extensions would be granted. Mr. Freidfertig then asked for a settlement meeting. The undersigned advised him that this he would have to discuss this proposal with the defendants and get back to him.

27. The plaintiff had not answered the counterclaims of the defendants at this point.

28. The plaintiff failed to retain counsel within the time it promised to, so the defendants faxed a letter to the plaintiff on July 6, 2004, which was more than three weeks after the deadline within which Mr. Freidfertig promised to retain counsel, advising that if counsel was not retained by the close of business on July 7, 2004, the motion to disqualify would be filed. The undersigned also advised Mr. Freidfertig in that letter that the defendants declined to hold a settlement meeting until he retained counsel and basic discovery was conducted.

29. The plaintiff still failed to obtain counsel within that time period, but a few days after the period had expired and on the day that the defendants were about to serve and file a motion to disqualify Mr. Freidfertig, on or about July 15, 2004, the defendants received an Answer to the counterclaims drafted by Attorney James Marano. The defendants thus did not file their motion to disqualify Mr. Freidfertig.

30. The plaintiff filed its Answer to the counterclaims without contacting the undersigned prior to filing same, and in direct violation of the agreement reached between Attorney Stone and the undersigned. This now meant that the defendants

could not amend as of right and needed leave of court. Furthermore, the delay in filing was created solely by the plaintiff and its failure to retain counsel within a reasonable time, failing to honor its agreement to allow the defendants to amend before the counterclaims were answered, filing its answer without prior notice to the undersigned, and filing a motion in bad faith to add parties to the action when all facts and circumstances were known to the plaintiff when the original complaint was filed.

31. The plaintiff then served a motion to amend its' complaint seeking to add new parties on or about August 4, 2004.

32. The plaintiff's failure to amend within 3 months, as generally required by Local Rule 3.02 had no reasonable basis and in fact, the plaintiff's proposed amendment was only made as a defense to the arguments raised in the defendants' Opposition to the Motion to Remand and to further intimidate the existing defendants and the defendants proposed to be added into the action. Whereas the defendants' proposed amendments are based on facts not known when the original answer and counterclaims were filed, and contain claims that were pending in a separate court at that time. The plaintiff was also on notice of the intent to amend since the conversation with Attorney Stone on May 3, 2004 and there is no prejudice to Mr. Freidfertig or the plaintiff if this motion is granted. The parties have not yet conducted any discovery and a scheduling conference has not yet been held. The plaintiff and proposed involuntary plaintiff thus have ample opportunity to defend these new claims. Therefore, the defendants submit that the circumstances

underlying this motion are fundamentally different than the reasons why the defendants opposed the plaintiff's Motion to Amend.

33. The claims relating to security deposit law violations were pending in the Brookline District Court at the time the defendants filed and served their Answer and Counterclaims, and the parties expressly agreed that judicial economy would best be served by dismissing the small claims actions and amending the pleadings to include those claims in the instant action.

34. The undersigned spoke to new counsel for the plaintiff, James Marano, Esq. in July 2004 and the undersigned and Attorney Marano exchanged voice mail messages during the end of August 2004 about the proposed amended claims. The undersigned advised Attorney Marano that the plaintiff's initial counsel, Michael Stone, had expressly agreed with the undersigned that the plaintiff would not file an answer to the counterclaims, and instead the defendants would amend their counterclaims as of right before an answer was served (no default would be taken) and then the plaintiff would simply answer the amended counterclaims. Attorney Marano indicated that he did not know what discussions the undersigned had had with Attorney Stone, but that he could not assent to any motion to amend filed by the defendants, especially since the defendants had opposed the plaintiff's Motion to Amend. The undersigned thus informed Attorney Marano that the instant motion would have to be filed.

## THE PROPOSED NEW CLAIMS

35. The defendants assert that the U.S. District Court has supplemental jurisdiction over the proposed amendments to the Answer and Counterclaims pursuant to 28

U.S.C. 1367, as the new claims will not destroy diversity pursuant to 28 U.S.C. 1332 because they are not inconsistent with the jurisdictional requirements of 28 U.S.C. 1332 since all defendants are still diverse from all plaintiffs.

36. The defendants seek to join Arnold M. Freidfertig as an involuntary plaintiff pursuant to Federal Rule of Civil Procedure 19(a).

37. The defendants have asked Mr. Freidfertig to join as a party plaintiff, but he has refused to do so.

38. The defendants assert that Mr. Freidfertig is a person who should be joined if feasible because the absence of Mr. Freidfertig will prevent the defendants from being able to seek complete relief. The defendants assert such is the case because the claims against Mr. Freidfertig are based upon fraud and grounds which seek to pierce the corporate veil, and these claims require the joinder of Mr. Freidfertig.

39. The defendants further assert that Dad Construction Co., Inc. is a small, closely held corporation, and it may be inadequately capitalized and further that Dad Construction Co., Inc. did not follow corporate formalities, commingled funds, put the security deposit checks in his personal bank account and therefore, Mr. Freidfertig is personally liable to the defendants for these claims. The defendants also assert that Mr. Freidfertig used the corporation specifically to engage in fraud and such is a further basis for his personal liability to the defendants. Finally, a judgment against the plaintiff would only allow the defendants to collect against the corporation and not Mr. Freidfertig personally.

40. Accordingly, the defendants cannot be accorded complete relief in the absence of Mr. Freidfertig.

41. <u>Federal Rule of Civil Procedure</u> 19(a) specifically provides that "If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff."

42. Mr. Freidfertig should be added as an involuntary plaintiff because the claims against him would not form the basis for a third party complaint since the claims of the defendants are not based on the assertion that Mr. Freidfertig is liable for all or part of any damages that the plaintiff may have sustained. Rather, the claims assert that Mr. Freidfertig has used the corporation as a mechanism to commit fraud and to avoid personal liability to other parties.

43. The defendants assert that Rule 3.02 Addition of New Parties, of the District Court's Expense and Reduction Plan (the comments) is not a bar to the instant motion being granted because there are extraordinary circumstances supporting the reasons this motion was not filed within three months of the defendants' initial Answer and Counterclaim. These reasons include: a) The action was removed to the U.S. District Court and b) after the removal the plaintiff had an attorney (Michael Stone) contact the undersigned and seek to settle the action while no litigation action was taken during these discussions at the plaintiff's request, c) the plaintiff then apparently did not actually retain Attorney Stone, but just used him as a mechanism to intimidate the defendants into dismissing their claims, when that did not work, d) the plaintiff filed a Motion to Remand, which was denied after opposition, e) then the plaintiff deliberately delayed obtaining counsel for more than a month, and the defendants had agreed to give the plaintiff time to

seek alternate counsel before filing any motion. f) no motion was filed to amend the counterclaims because Attorney Stone had specifically agreed not to file an answer until the defendants amended as of right, g) even after Attorney Stone was not retained, the defendants still believed that his communications with the undersigned were discussed with his client and therefore the plaintiff would not answer before he obtained counsel whom filed an appearance, h) the parties agreed in the interim that the small claims actions would be dismissed and joined in the instant action, i) then the plaintiff retained its current counsel and filed an answer without ever contacting the defendants or the undersigned and therefore preventing the amendment as of right, j) then the plaintiff filed a motion to amend its complaint and the defendants were forced to respond to that motion.

44. The defendants assert that the course of conduct of the plaintiff, and especially the agreement between Attorney Stone and the undersigned on the amendment of pleadings, which was not followed by the plaintiff, was designed to delay the action, intimidate the defendants into dropping their claims and was meant to overwhelm the defendants so that they would have to respond to several motions instead of pursuing their claims, increase the defendants legal expenses exorbitantly and prevent the defendants from pursuing their legitimate claims, and should not be permitted to be successful in preventing the amendments agreed upon by counsel.

45. The defendants assert that Mr. Freidfertig has been on notice that these claims would be pursued since the conversation between counsel on May 3, 2003 and

that there is no conceivable prejudice to him or the plaintiff if the instant motion is granted.

46. The defendants assert that the joinder of Mr. Freidfertig will not result in any other parties being brought into the action. Although admittedly Dad Construction Co., Inc. is a separate entity from Mr. Freidfertig, the defendants are asserting that they are really one in the same, at least for purposes of the claims in this action.

47. The defendants assert that the circumstances are far different than when the plaintiff sought to amend, seeking to bring in multiple parties who the plaintiff chose not to sue and none of which were on notice of potential claims against them.

48. In the instant action as it presently stands, Mr. Freidfertig is the only corporate officer and shareholder and so he will be involved in every stage of this litigation whether he is a party or not. The plaintiff cannot pursue its case without him, he will be the one answering discovery and he will be the one that testifies for the plaintiff.

49. Finally, <u>Federal Rule of Civil Procedure</u> 15(a) states that leave of court should be freely given when justice so requires and the defendants assert justice cannot be done without the granting of this motion.

50. The proposed Amended Answer and Counterclaims is attached hereto as Exhibit A, however the basis of the claims is as follows.

51. The defendants assert that both the plaintiff and the proposed involuntary plaintiff, are liable to them pursuant to Chapter 186 of the Massachusetts General Laws for violations of requirements relating to security deposits.

52. The defendants assert that Mr. Freidfertig is personally liable to the defendants for fraud, which is not protected by existence of the corporation.

53. The defendants assert that the corporate veil must be pierced because Mr. Freidfertig has not obeyed corporate formalities, has commingled corporate funds with his personal funds, including signing checks made out to the plaintiff with his personal endorsement, and the corporation has failed to always make clear in all letters, documents and other communications that it was always the corporation that was acting and not Mr. Freidfertig personally.

### REQUEST FOR ORAL ARGUMENT

The defendants believe that oral argument will assist the court with its determination of the instant motion and therefore request that oral argument be granted on Defendants' Motion to Amend Answer and Counterclaims and Assert Additional Claims pursuant to Local Rule 7.1(D).

WHEREFORE, the defendants respectfully request this Honorable Court grant the requested relief for the reasons set forth above and such other and further relief as the

Court may deem just and proper.

Dated: October 1, 2004

Respectfully Submitted,
DEREK HEIMLICH, ANDREW LEVY and
ARLEIGH GOODWIN,
By their attorney,

*[signature]*

Richard J. Bombardo, Esq.
11 Beacon Street, Suite 520
Boston, MA 02108
(617) 742-0575
B.B.O. # 633161

## VERIFICATION

For purposes of Rule 3.02 Addition of New Parties, of the District Court's Expense and Reduction Plan, I hereby certify under the pains and penalties of perjury that all statements contained in the foregoing motion are true to the best of my knowledge this 1st day of October, 2004.

*[signature]*

Richard J. Bombardo

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the Defendants' Motion to Amend Answer and Counterclaims and Assert Additional Claims, to be served upon counsel for Plaintiff this 1st day of October 2004 by mailing same first-class to: James V. Marano, Jr., Kushner & Marano, P.C., 1231 Washington Street, Newton, MA 02465, and the proposed Involuntary Plaintiff, by mailing same to: Arnold M. Freidfertig, 1714 Beacon Street, Brookline, MA 02445.

*[signature]*

Richard J. Bombardo

    4. improperly metered and wired heating and gas service causing Unit 2 to pay for heat in other units and greatly increasing the costs;

    5. failing to deliver the premises in clean and sanitary condition;

    6. smoke detector inoperable;

    7. the oven had a gas leak;

    8. ceiling leaked water; and

    9. inadequate and improperly working furnace

b. UNIT 3

    1. Heater improperly connected to Unit 2;

    2. extensive water damage to walls (including mold);

    3. peeling paint and plaster;

    4. cabinets falling off the wall;

    5. rotten and decaying food left in the refrigerator from prior tenant; and

    6. trash throughout the apartment at the time of letting.

92. As a result of the Defendant-in-counterclaim's negligent failure to maintain the premises, the Plaintiffs-in-counterclaim have suffered damages, including incidental and consequential damages which proof at time of trial will reveal.

### COUNT V- VIOLATION OF SECURITY DEPOSIT LAW
### DAD CONSTRUCTION CO., INC.

93. The Plaintiffs-in-Counterclaim repeat and reallege the allegations contained in paragraphs 1 through 92 as if same were fully set forth herein.

94. The Plaintiffs-in-counterclaim were required to pay a security deposit to Dad Construction Co., Inc. as a condition of their tenancy.

95. Dad Construction Co., Inc. failed to comply with Massachusetts General Laws, Ch. 186, Sec. 15B, including failing to escrow the security deposits in a trust account, failing to give a statement of condition to the tenants at the time of letting, failing to return the security deposit within 30 days of the termination of the tenancy or giving the tenants notice in writing of the reason why their security deposits were not returned, and other violations of the law.

96. As a result of Dad Construction Co., Inc.'s breach of the security deposit law, the plaintiffs-in-counterclaim suffered damages.

97. The plaintiffs-in-counterclaim are therefore entitled to three times the value of their security deposit, plus interest and attorney's fees.

## COUNT VI – FRAUD, DECEIT AND MISREPRESENTATION
## ARNOLD M. FREIDFERTIG

98. The Plaintiffs-in-counterclaim repeat and reallege the allegations contained in paragraphs 1 through 97 as if same were fully set forth herein.

99. The Defendant-in-counterclaim has made representations in Plaintiff's Complaint which the Defendant-in-counterclaim knows or reasonably should know are false, including that the Plaintiffs-in-counterclaim have caused any damage to the premises and that the Defendant-in-counterclaim was criminally charged as a result of any action or inaction of any of the Plaintiffs-in-counterclaim.

100. The Defendant-in-counterclaim has brought this fraudulent action solely to intimidate and deter the Plaintiffs-in-counterclaim from pursuing their small claims actions against the Defendant-in-counterclaim for violation of the security deposit law.